Nos. 25-1862 & 25-1865

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

JULI WINTJEN, et al.,

*Appellees / Cross-Appellants*,

v.

DENNY'S, INC.

*Appellant / Cross-Appellee.*

---

Cross-Appeals from Orders of the
United States District Court for the Western District of Pennsylvania
Case No. 2:19-cv-00069, Hon. Christy Criswell Wiegand

---

**BRIEF OF APPELLEES JULI WINTJEN, ET AL.**
**(SECOND-STEP BRIEF)**

---


Gerald D. Wells, III
CONNOLLY WELLS
& GRAY, LLP
101 Lindenwood Dr., Ste. 225
Malvern, PA 19355
T: 610-822-3700

Jamisen A. Etzel
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
T: 412-322-9243

*Attorneys for Appellees*

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1

STATEMENT OF JURISDICTION ........ 5

STATEMENT OF ISSUES ........ 6

STATEMENT OF RELATED APPEALS ........ 7

STATEMENT OF THE CASE ........ 8

I. Statutory and Regulatory Background ........ 8

A. Tip Credit Under the FLSA ........ 8

B. Tip Credit Under the PMWA ........ 12

II. Factual and Procedural Background ........ 13

SUMMARY OF THE ARGUMENT ........ 20

ARGUMENT ........ 25

I. Wintjen and the Workers have Article III standing. ........ 25

II. The District Court did not err as to the FLSA's requirements. ........ 30

A. Rules of statutory construction require every provision to be given effect. ........ 30

B. The FLSA's plain text does not support Denny's. ........ 31

C. The regulation does nothing more than restate the statute. ........ 38

D. Denny's reliance on *Schaefer* is misplaced ........ 40

III. The District Court did not err as to the PMWA. ........ 43

A. The text of PMWA parallels the FLSA. ........ 43

IV. The Workers' Rule 23 class was appropriately certified. .............47

V. The Workers are entitled to prejudgment interest........................49

A. Under Pennsylvania law, prejudgment interest is due as of right to a prevailing plaintiff in an unpaid wage case.........52

B. If awarding prejudgment interest was merely discretionary, then the District Court abused its discretion..........................61

VI. The District Court erred in reducing the Workers' counsel's hourly rates when determining whether the Workers' attorneys' fees request was reasonable. ........................................64

A. The District Court negated the contingent risk aspect of Lynch Carpenter's rates, and then failed to consider the contingent nature of the case anywhere else in the fee analysis...........................................................................66

B. The District Court failed to give proper weight to numerous other courts' approvals of Lynch Carpenter's rates in complex litigation, which are strong evidence of Lynch Carpenter's fair market rates. ......................................71

C. The court failed to consider numerous other indicators that the requested fee was reasonable, regardless of whether the court believed Lynch Carpenter's rates were high.........................................................................74

CONCLUSION ......................................................................76

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adam v. Barone*,
41 F.4th 230 (3d Cir. 2022) .......... 25

*Ali v. Fed. Bureau of Prisons*,
552 U.S. 214 (2008) .......... 33

*Andrews v. Cross Atlantic Capital Partners, Inc.*,
158 A.3d 123 (Pa. Super. Ct. 2017) .......... 57, 58, 60, 64

*Beauregard v. Broadway Elec. Serv. Corp.*,
2022 WL 2293969 (W.D. Pa. June 24, 2022) .......... 55

*BedRoc Ltd., LLC v. United States*,
541 U.S. 176 (2004) .......... 32

*Bostock v. Clayton Cnty.*,
590 U.S. 644 (2020) .......... 20, 34

*Braun v. Wal-Mart Stores, Inc.*,
24 A.3d 875 (Pa. Super. Ct. 2011) .......... 69, 70, 71

*Brock v. Richardson*,
812 F.2d 121 (3d Cir. 1987) .......... 52, 59, 63

*Byrd v. Shannon*,
715 F.3d 117 (3d Cir. 2013) .......... 42

*Casco v. Ponzios RD, Inc.*,
No. 16-2084, 2019 WL 1650084 (D. N.J. April 17, 2019) .......... 9, 11

*Chavez-Deremer v. Medical Staffing of America, LLC*,
147 F.4th 371 (4th Cir. 2025) .......... 8

*City of Burlington v. Dague*,
505 U.S. 557 (1992) .......... 68, 69

*Com. v. Stuber*,
822 A.2d 870 (Pa. Commw. Ct. 2003) .......... 44

*Commonwealth v. Jarowecki*,
604 Pa. 242, 985 A.2d 955 (2009) ........................................................45

*Connecticut Nat. Bank v. Germain*,
503 U.S. 249 (1992) ................................................................................33

*CoreStates Bank, N.A. v. Cutillo*,
723 A.2d 1053 (Pa. Super. Ct. 1999) ...................................................55

*Cumbie v. Woody Woo, Inc.*,
596 F.3d 577 (9th Cir. 2010).................................................................9

*De Asencio v. Tyson Foods, Inc.*,
500 F.3d 361 (3d Cir. 2007) ..................................................................8

*Doty v. Elias*,
733 F.2d 720 (10th Cir. 1984)...............................................................43

*Elmer v. Kohli*,
2025 WL 99595 (D. N.J. Jan. 14, 2025) ...............................................26

*Espinoza v. Atlas Railroad Construction, LLC*,
657 F. App'x 101 (3d Cir. 2016).....................................................45, 46

*Ettorre v. Russos Westheimer, Inc.*,
No. 21-20344, 2022 U.S. App. LEXIS 7295
(5th Cir. Mar. 18, 2022) ........................................................................43

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
545 U.S. 546 (2005)................................................................................35

*Fernandez v. Levin*,
548 A.2d 1191 (Pa. 1988) ......................................................................53

*Friedrich v. U.S. Computer Systems, Inc.*,
1995 WL 412385 (E.D. Pa. July 10, 1995) ..............................59, 60, 64

*Galleher v. Artisanal, LLC,*
No. 19-cv-55, 2021 WL 243868 (W.D. N.C. Jan. 25, 2021).................11

*Garland v. Cargill*,
602 U.S. 406 (2024)................................................................................30

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013) .......... 8

*Golfview Manor, Inc. v. Commonwealth, Dep't of Labor & Ind.*,
414 A.2d 722 (Pa. Commw. Ct. 1980) .......... 47

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
530 U.S. 1 (2000) .......... 33

*Hodgson v. Wheaton Glass Co.*,
446 F.2d 527 (3d Cir. 1971) .......... 63

*Hoffman v. Bear Chase Brewing Co., LLC*,
2023 WL 384293 (E.D. Va. Jan. 18, 2023) .......... 41

*Holland as Trustee of UMWA 1992 Benefit Plan v. Arch Coal, Inc.*,
947 F.3d 812 (Ct. of App. D.D.C. 2020) .......... 32

*Howard v. Second Chance Jai Alai LLC*,
No. 15-cv-200, 2016 WL 3349022 (M.D. Fl. June 16, 2016) .......... 39

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......... 74

*In re FTX Trading Ltd.*,
91 F.4th 148 (3d Cir. 2024) .......... 30

*In re Rite Aid Corp. Secs. Litig.*,
396 F.3d 294 (3d Cir. 2005) .......... 76

*Inhabitants of Montclair Tp. v. Ramsdell*,
107 U.S. 147 (1883) .......... 31

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
426 F.3d 694 (3d Cir. 2005) .......... 66

*Karonka v. Asuka Blue Investment, LLC*,
No. 23-CV-02891, 2024 WL 4905985 (S.D. Tex. Nov. 27, 2024) .......... 39

*KEM Res., LP v. Deer Park Lumber, Inc.*,
283 A.3d 362 (Table), 2022 WL 2717774 (Pa. Super. Ct. 2022) .......... 51

*Khan v. Attorney General of U.S.*,
979 F.3d 193 (3d Cir. 2020) ........................................................................ 29

*Kilgore v. Outback Steakhouse of Fl., Inc.*,
160 F.3d 294 (6th Cir. 1998) ........................................................................ 36, 37

*Knepper v. Rite Aid Corp.*,
675 F.3d 249 (3d Cir. 2012) ........................................................................ 35, 36

*Kubiak v. S.W. Cowboy, Inc.*,
164 F. Supp. 3d 1344 (M.D. Fla. 2016) ........................................................ 28

*Lamie v. U.S. Tr.*,
540 U.S. 526 (2004) ........................................................................ 33

*Lawrence v. City of Philadelphia, Pa.*,
527 F.3d 299 (3d Cir. 2008) ........................................................................ 11

*Leclair v. Diakon Lutheran Soc. Ministries*, 2013 Pa. Dist. &,
Cnty. Dec. LEXIS 1 (Lehigh Cnty. C.C.P. Jan. 14, 2013) .................. 60

*Lewis v. City of Chicago, Ill.*,
560 U.S. 205 (2010) ........................................................................ 37

*Livi v. Hyatt Hotels Corp.*,
751 F. App'x 208 (3d Cir. 2018) ........................................................................ 44

*Loeffler v. Frank*,
486 U.S. 549 (1988) ........................................................................ 52

*Loughner v. University of Pittsburgh*,
260 F.3d 173 (3d Cir. 2001) ........................................................................ 66

*Lundeen v. 10 West Ferry Street Operations, LLC*,
-- F.4th --, 2025 WL 2935340 (3d Cir. Oct. 16, 2025) ..................... 30, 36

*Marquez v. Upstairs at Chef Vola, Inc.*,
2022 U.S. Dist. LEXIS 111281 (D.N.J. June 23, 2022) ....................... 28

*Martin v. Tango's Restaurant, Inc.*,
969 F.2d 1319 (1st Cir. 1992) ........................................................ 22, 29

*Masterson v. Federal Exp. Corp.*,
2008 WL 5189342 (M.D. Pa. Dec. 10, 2008)........................................46

*Mazzarella v. Fast Rig Support, LLC*,
2014 WL 2861027 (M.D. Pa. June 23, 2014)........................................46

*McDonnell v KRG Kings LLC*,
2024 WL 3082737 (W.D. Pa. June 21, 2024) .......................................61

*Milner v. Dep't of the Navy*,
562 U.S. 562 (2011)..........................................................................36

*Mitchell v. Robert DeMario Jewelry, Inc.*,
361 U.S. 288 (1960)............................................................................8

*Nagle Engine & Boiler Works v. City of Erie*,
38 A.2d 225 (Pa. 1944) ...............................................................53, 58

*Nasrallah v. Barr*,
590 U.S. 573 (2020)..........................................................................33

*National Restaurant Ass'n v. Solis*,
870 F. Supp. 2d 42 (D.D.C. 2012).........................................................39

*New Jersey Bankers Assoc. v. Attorney General New Jersey*,
49 F.4th 849 (3d Cir. 2022)........................................................30, 41

*Oncale v. Sundowner Offshore Services, Inc.*,
523 U.S. 75 (1998).....................................................................34, 37

*Palmgreen v. Palmer's Garage, Inc.*,
117 A.2d 721 (Pa. 1955) ....................................................................53

*Penneys v. Pennsylvania R. Co.*,
183 A.2d 544 (Pa. 1962) ....................................................................53

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
483 U.S. 711 (1987)..........................................................................68

*Perez v. Lorraine Enters.*,
769 F.3d 23 (1st Cir. 2014) ................................................................43

*Perez v. Prime Steak House Restaurant Corp.*,
939 F. Supp. 2d 132 (D. P.R. 2013) .......................................................36

*Pickett v. Sheridan Health Care Ctr.*,
664 F.3d 632 (7th Cir. 2011)...............................................................68

*Pignataro v. Port Auth. of New York & New Jersey*,
593 F.3d 265 (3d Cir. 2010) ..........................................................50, 63

*Polselli v. Nationwide Mut. Fire Ins. Co.*,
126 F.3d 524 (3d Cir. 1997) ...................................................66, 69, 71

*Rafferty v. Denny's, Inc.*,
13 F.4th 1166 (11th Cir. 2021) ...........................................................42

*Reich v. Chez Robert, Inc.*,
28 F.3d 401 (3d Cir. 1994) ............................................9, 23, 28, 29, 35

*Reining v. RBS Citizens, N.A.*,
912 F.3d 115 (3d Cir. 2018) ...............................................................47

*Rendline v. Pantzer*,
661 A.2d 1202 (N.J. 1995)..................................................................71

*Resch v. Krapf's Coaches, Inc.*,
785 F.3d 869 (3d Cir. 2015) ...............................................................46

*Reynolds v. Chesapeake & Delaware Brewing Holdings, LLC*,
2020 WL 2404904 (E.D. Pa. May 12, 2020) .......................................44

*Reynolds v. Turning Point Holding Company, LLC*,
2020 WL 7336932 (E.D. Pa. Dec. 14, 2020) .......................................26

*Richard v. Marriott Corp.*,
549 F.2d 303 (4th Cir. 1977)..........................................................35, 38

*Romero v. Top-Tier Colo. LLC*,
849 F.3d 1281 (10th Cir. 2017)..........................................................9, 10

*Schaefer v. Walker Bros. Enterprises, Inc.*,
829 F.3d 551 (7th Cir. 2016)..........................................................40, 41

*Sec'y United States DOL v. Mosluoglu, Inc.*,
2023 U.S. App. LEXIS 24385 (3d Cir. Sept. 14, 2023) ........................ 42

*Sec'y United States DOL v. Mosluoglu, Inc.*,
2023 WL 5972044 (3d Cir. Sept. 14, 2023) ........................................ 27

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985) ............................................................................ 34

*Signora v. Liberty Travel, Inc.*,
886 A.2d 284 (Pa. Super. Ct. 2005) ............................................... 60, 71

*Smith v. Fidelity Consumer Discount Co.*,
898 F.3d 907 (3d Cir. 1990) ........................................................... 38, 39

*St Louis v. Sugar Rush Inc.*,
2025 WL 2585569 (E.D.N.Y. Aug. 18, 2025) ....................................... 27

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .............................................................. 74

*Trejo v. Ryman Hospitality Props.*,
795 F.3d 442 (4th Cir. 2015) ................................................................ 9

*TRW Inc. v. Andrews*,
534 U.S. 19 (2001) ............................................................................... 31

*U.S. v. Cooper*,
396 F.3d 308 (3d Cir. 2005) ........................................................... 31, 41

*U.S. v. Holy Land Foundation for Relief and Development*,
722 F.3d 677 (5th Cir. 2013) .......................................................... 33, 36

*United States v. Jabateh*,
974 F.3d 281 (3d Cir. 2020) ................................................................ 20

*Vanstory–Frazier v. CHHS Hosp. Co., LLC*,
2010 WL 22770 (E.D. Pa. Jan 4, 2010) ................................................ 46

*Verma v. 3001 Castor, Inc.*,
937 F.3d 221 (3d Cir. 2019) ................................................................ 56

*Walsh v. La Tolteca Wilkes Barre, Inc.*,
2023 U.S. Dist. LEXIS 218430 (M.D. Pa. Dec. 6, 2023) ...................... 42

*Ware v. Rodale Press, Inc.*,
322 F.3d 218 (3d Cir. 2003) ........................................................... 55

*Weichsel v. JP Morgan Chase Bank, N.A.*,
65 F.4th 105 (3d Cir. 2023) ........................................................... 25

*West Republic Mining Co. v. Jones & Laughlins*,
108 Pa. 55 (1885) ......................................................................... 53

*West Virginia v. United States*,
479 U.S. 305 (1987) ...................................................................... 52

*Williams v. Taylor*,
529 U.S. 362 (2000) ................................................................. 29, 31

**Statutes**

1 Pa. Cons. Stat. § 1932 ............................................................ 46

1 Pa. Cons. Stat. § 1903(a) ......................................................... 45

1 Pa. Cons. Stat. § 1921(b) ......................................................... 45

28 U.S.C. § 1291 ........................................................................... 5

28 U.S.C. § 1331 ........................................................................... 5

28 U.S.C. § 1367(a) ....................................................................... 5

29 U.S.C. § 203(m)(2) ............................................................ passim

29 U.S.C. § 206(a) ......................................................................... 8

43 P.S. § 333.101 ........................................................................ 63

43 P.S. § 333.103(d) .............................................................. passim

43 P.S. § 333.11 .......................................................................... 66

**Rules**

Fed. R. Civ. P. 23 .......... 14

Pa. R. Civ. P. 1717 .......... 67, 69, 70

**Regulations**

29 C.F.R. § 531.59(b) .......... passim

**Other Authorities**

Restatement (First) of Contracts § 337 (1932) .......... 54

## PRELIMINARY STATEMENT

Denny's appeal of the District Court's entry of judgment against it for violations of the Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA"), relies entirely on the contention that the plain language of both statutes should be ignored. Adopting this position would upend decades of statutory interpretation wherein both this Court and the United States Supreme Court has stated unequivocally that, where possible, every word of a statute is to be given meaning. Importantly, as the record below shows, Denny's fully complied with the requirements of both statutes in 2011 and again in 2019. Now, having inexplicably failed to adhere to the plain language of the statutes during the Class Period, Denny's seeks the extraordinary relief of asking this Court to excise whole portions of both the FLSA and PMWA to excuse their violations and allow them to avoid paying their employees the minimum wage due and owing.

If an employer does not provide complete and accurate tip credit notification, it cannot claim any portion of an employee's tips as wages. Instead, it owes the employee the full minimum wage, regardless of the amount of tips earned. Because Denny's did not provide complete and

accurate tip credit notification as required by the black letter language of the statutes, it illegally paid its employees a subminimum wage. Thus, the claim is not merely a "technical violation" nor a violation without a resulting injury. Rather, Denny's improperly claimed a tip credit and consequently paid employees an illegal subminimum wage. As such, Julie Wintjen and the certified Class Members[1]suffered a concrete harm.

Moreover, the amount of tips earned by the Workers is of no moment. They were owed a higher hourly rate *from Denny's* due to its failure to abide by the statute. This is because an employer is permitted to pay a subminimum wage only if it has met certain conditions. One of the conditions is that, per the FLSA and its applicable regulation, as well as the PMWA, an employee must be told five pieces of information. *See* 29 U.S.C. § 203(m)(2), 29 C.F.R. § 531.59(b), 43 P.S. § 333.103(d). It is a simple, yet strictly construed, mandate, in return for which the employer is granted an enormous benefit in the form of lower payroll expenses. Here, during the applicable period, Denny's only told its

[1] Hereinafter, Wintjen and the class members are collectively referred to as the "Workers."

employees four of the required pieces of information. Because it did not strictly comply with the plain command of both statutes, Denny's is prohibited from paying the reduced hourly rate and owes Class Members the full minimum wage.

The analysis is the same under both statutes because the PMWA substantially parallels the FLSA. Indeed, district courts in this Circuit are directed to look to the FLSA when analyzing a claim under the PMWA. Accordingly, it is irrelevant whether Pennsylvania adopted a similar regulation as to the federal regulation. Because the statutes substantially parallel one another, the District Court correctly found that Denny's violated the plain language of both the FLSA and PMWA.

The District Court committed no error when it found that the issue of failure to comply with the tip credit notification requirements predominated. Moreover, Denny's incorrectly states that Wintjen is not an appropriate class representative because she "already obtained relief on her individual claim." Denny's 1st Br. at 5. That is simply not accurate. Wintjen did not recover on her individual federal claim. As such, class certification was eminently appropriate. In short, Defendant inexplicably ceased following the commands of the statute, were caught,

and now seek to avoid paying the Workers all wages due by asking this Court to only give effect to part of the statute. Respectfully, Denny's does not get to pick and choose what parts of a statute must be followed. For the reasons below, the District Court should be affirmed on all issues raised by Denny's in its appeal.

This Court should, however, reverse the District Court's denial of prejudgment interest to the Workers, and vacate the District Court's attorney fee order and remand for a reconsideration of that issue.

## STATEMENT OF JURISDICTION

The District Court had federal question jurisdiction for the FLSA claims under 28 U.S.C. § 1331, and supplemental jurisdiction for the PMWA claims under 28 U.S.C. § 1367(a).

This Court has jurisdiction under 28 U.S.C. § 1291 to review all of the District Court's challenged orders, which became final with the entry of judgment on April 4, 2025. JA6.

## STATEMENT OF ISSUES

1. Did the District Court correctly find that the Workers suffered Article III harm in the form of financial losses when Denny's illegally paid them several dollars below the statutory minimum wage per hour during the class period?

2. Did the District Court correctly find that Denny's raised no dispute of material fact that it violated the FLSA and PMWA by paying the Workers a tipped-rate subminimum wage, despite Denny's failure to satisfy the statutory requirements for doing so?

3. Did the District Court correctly certify a Rule 23 class of Workers for the PMWA claim, given that all Workers were paid the same subminimum wage, and Denny's uniformly failed to meet the requirements for paying them that rate?

4. Did the District Court err when it denied the Workers' request for prejudgment interest on their backpay award, given that such awards are deemed a matter of right under Pennsylvania law?

5. Did the District Court err when it reduced the Workers' attorney fee award by lowering the requested rates of the Workers' Pittsburgh-based counsel, without taking into consideration whether

the requested rates and total fee were reasonable in light of the contingent nature of the representation and the significant sum recovered for the Workers?

## STATEMENT OF RELATED APPEALS

Denny's appeal is Case No. 25-1865. The Workers' cross-appeal as to the denial of prejudgment interest and reduced attorney fee award is Case No. 25-1865. Otherwise, the Workers are not aware of any related appeals.

## STATEMENT OF THE CASE

### I. Statutory and Regulatory Background

#### A. Tip Credit Under the FLSA

The FLSA has a "broad remedial purpose," *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 373 (3d Cir. 2007), with the "central aim of the Act" being "to achieve ... certain minimum labor standards." *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). Importantly, the FLSA established baseline standards through "federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). To that end, courts must "heed the Supreme Court's warning that the FLSA 'must not be interpreted in a narrow, grudging manner.'" *Chavez-Deremer v. Medical Staffing of America, LLC,* 147 F.4th 371, 409 (4th Cir. 2025) (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123,* 321 U.S.590, 597 (1944)). Rather, courts "must be guided by the FLSA's remedial and humanitarian purpose, which demands that it be broadly interpreted and applied[.]" *Id.* (internal quotes omitted).

Generally, the FLSA mandates that employers pay employees no less than the federal minimum wage. *See* 29 U.S.C. § 206(a). There are,

however, “exceptions to this rule.” *Casco v. Ponzios RD, Inc.,* No. 16-2084, 2019 WL 1650084, *4 (D. N.J. April 17, 2019). “One such exception, known as the ‘tip credit,’ allows an employer to pay a ‘tipped employee’ less than the minimum hourly wage if the employees’ wages and tips, added together, meet or exceed the required minimum wage.” *Id.*

This exception is available “only if the employer informs the tipped employee that her wage is being decreased under section 3(m)’s tip-credit provision.” *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994). Consequently, Section 203(m) “‘does not state freestanding *requirements* pertaining to all tipped employees,’ but rather creates rights and obligations for employers attempting to use tips as a credit against the minimum wage.” *Trejo v. Ryman Hospitality Props.*, 795 F.3d 442, 448 (4th Cir. 2015) (quoting *Cumbie v. Woody Woo, Inc.*, 596 F.3d 577, 581 (9th Cir. 2010)) (emphasis in original).

As such, “an employer doesn’t comply with its federal minimum-wage obligations just because its employees receive at least $7.25 an hour in tips.” *Romero v. Top-Tier Colo. LLC*, 849 F.3d 1281, 1282 (10th

Cir. 2017). Rather, "an employer can treat tips as wages" only under certain limited circumstances. *Id.* (citing 29 U.S.C. § 203(m)).

The applicability of the tip credit is set forth in 29 U.S.C. 203(m)(2), which states:

> (A) In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (i) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. **The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection**, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

29 U.S.C. § 203(m)(2) (emphasis added). In short, "Section 203(m) places an affirmative obligation on [the employer] to inform [its employees] of the provisions contained in § 203(m). *Galleher v. Artisanal, LLC,* No. 19-cv-55, 2021 WL 243868, *6 (W.D. N.C. Jan. 25, 2021). These obligations are "strictly" construed against the employer. *Casco*, 2019 WL 1650084, *5 (citing, *inter alia*, *Lawrence v. City of Philadelphia, Pa.*, 527 F.3d 299, 310 (3d Cir. 2008)).

The applicable regulation simply reiterates the five pieces of information required under 29 U.S.C. 203(m):

> (b) As indicated in § 531.51, the tip credit may be taken only for hours worked by the employee in an occupation in which the employee qualifies as a "tipped employee." Pursuant to section 3(m)(2)(A), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m)(2)(A) of the Act, i.e.: The amount of the cash wage that is to be paid to the tipped employee by the employer; the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; that all tips received by the tipped employee must be retained by the employee except for a tip pooling arrangement limited to employees who customarily and regularly receive tips; **and that the tip credit shall not apply to any employee who has not**

> **been informed of the requirements in this section.**

29 C.F.R. § 531.59(b) (emphasis added).

Accordingly, under both the statute and the regulation, an employer must provide an employee with five pieces of information before the employer can claim part of an employee's tips as a credit against wages owed. Failure to do so mandates that the employer must pay the employee the standard minimum wage.

### B. Tip Credit Under the PMWA

As amended in 1998, Section 333.103(d) of the PMWA states, in relevant part:

> In determining the hourly wage an employer is required to pay a tipped employe, the amount paid such employe by his or her employer shall be an amount equal to: (i) the cash wage paid the employe which for the purposes of the determination shall be not less than the cash wage required to be paid the employe on the date immediately prior to the effective date of this subparagraph; and (ii) an additional amount on account of the tips received by the employe which is equal to the difference between the wage specified in subparagraph (i) and the wage in effect under section 4 of this act. The additional amount on account of tips may not exceed the value of tips actually received by the employe. The previous sentence shall not apply with respect to any tipped employe unless:

> (1) Such employe has been informed by the employer of the provisions of this subsection;
>
> (2) All tips received by such employe have been retained by the employe and shall not be surrendered to the employer to be used as wages to satisfy the requirement to pay the current hourly minimum rate in effect…

43 P.S. § 333.103(d).

As the District Court correctly found, this Pennsylvania statute, just like the FLSA, requires an employer provide an employee with five specific pieces of information before the employer can claim part of an employee's tips as a credit against wages owed.

## II. Factual and Procedural Background

On January 22, 2019, Wintjen filed her complaint asserting various wage and hour claims against Defendant under the PMWA and the FLSA. Denny's denied liability and asserted various defenses in its Answer. After completing the initial phase of discovery, and pursuant to the District Court's scheduling order, Wintjen and Denny's filed cross-motions for summary judgment. On February 25, 2021, the District Court granted summary judgment on Wintjen's individual FLSA notice

claim and denied summary judgment as to Wintjen's other claims. JA107–08, JA128–29.

Thereafter, Wintjen moved for conditional certification of her FLSA claims and for class certification of her PMWA tip credit notification claim. Of relevance here, the District Court conditionally certified a FLSA collective action and certified a Fed. R. Civ. P. 23 class action for the PMWA tip credit notification claim on November 18, 2021. JA67–68, JA106.

Wintjen and Denny's settled certain of the FLSA claims that did not relate to tip credit notification. JA531 at Dkts. 233–35. Wintjen then moved for final certification of a modified remaining FLSA collective, excluding individuals for whom Denny's had evidence it had provided notice to (through an Employee Tip Credit Notification form, "the ETCN form"). The ETCN form was distributed to Denny's employees in 2011 and provided all five pieces of information set forth in Section 203(m); Denny's compiled a list of servers to whom the ETCN form was purportedly given and retained copies of executed ETCN forms. JA369-70 ¶¶ 13–17.

However, Denny's did not continue using the compliant ETCN form. JA371–72. In January 2019, Denny's began using another form, "Important Information for Tipped Employees," ("IITE") for onboarding new servers. JA371. Denny's stipulated that it had no evidence of informing servers that the "tip credit shall not apply to any employee who has not been informed of the requirements [of Section 3(m)(2)(A) of the Fair Labor Standards Act]" other than the ETCN form and IITE. JA371 ¶ 28, JA372 ¶29.

Denny's argued for decertification of the FLSA collective action and certified PMWA class, but the District Court denied Denny's motion and approved continuation of the FLSA collective action. JA53–54. The District Court modified both the FLSA collective action and the PMWA Class to include only tipped employees "for whom [Denny's] does not have an executed copy of the 2011 Employee Tip Credit Notification Form." JA 53–54, JA65. This class is the Workers whose claims are at issue in this appeal.

On August 7, 2023, Wintjen and Denny's filed cross-motions for summary judgment. JA533. On February 22, 2024, the District Court issued an order granting in part, and denying in part, Wintjen's motion

for summary judgment, and denied Denny's motion for summary judgment. JA35–36. In relevant part, the District Court, via amended order, held that Denny's violated the FLSA and PMWA by failing to provide notice in conformity with § 203(m) and 43 P.S. § 333.103(d) with respect to those employees employed between January 22, 2016 and August 1, 2019 who did not receive an ETCN form. JA35.

The District Court then set a trial date of April 29, 2024, on the remaining issues, primarily whether the individuals on Denny's "ETCN List" had in fact received the form, and whether Denny's violation was willful. After receiving this order, Denny's agreed to settle the claims of FLSA and PMWA plaintiffs whose names were on the ETCN List. JA537 at Dkt.291, JA545 at Dkt. 361 (Final Approval Order). Notably, Wintjen's FLSA claim was severed and she was excluded from the settlement to preserve her ability to represent the PMWA class that had won summary judgment, so Wintjen received no recovery from this settlement. JA541 at Dkt. 330 (order severing Wintjen's FLSA claim).

To permit the District Court to calculate the appropriate judgment for the Workers' successful PMWA claim, Denny's stipulated that during the relevant class period, the Workers had worked for a total of

685,163.31 hours and received only the tipped-rate subminimum wage from Denny's. JA354 ¶¶ 2–3. The total dollar value of tip credit claimed by Denny's for those hours was $3,026,474.32. JA354 ¶ 4. That value divided by the total number of hours is $4.417, almost exactly equal to the $4.42 difference between $7.25 and $2.83.

On behalf of the Workers who won summary judgment, Wintjen moved for an award of prejudgment interest in anticipation of a final judgment worth $3,026,474.32, the full amount of which had been unpaid since at least August 1, 2019. The District Court denied the motion in a docket text order, JA34, on the basis that the PMWA did not expressly provide for such an award and because the District Court believed that "no controlling precedent … permits Ms. Wintjen and the class to receive prejudgment interest as a matter of right." JA34. The District Court did not discuss whether it nevertheless had discretion to award interest, or why it would not exercise such discretion.

Class Counsel for the Workers moved for an award of attorneys' fees and expenses, as permitted by the fee-shifting provisions of both the FLSA and PMWA. Counsel initially requested $1,106,954.50 in attorney fees, basing their request off the recorded hours of counsel for

the matter multiplied by their respective hourly rates (i.e., a straight lodestar). An attorney for each of the two plaintiffs' firms (Lynch Carpenter, LLP and Connolly Wells & Gray, LLP) submitted declarations attesting to the hours worked, their customary rates, their experience and qualifications, and other factors supporting the reasonableness of the fee request, such as the contingent nature of the representation, and identifying other recent cases in which the rates had been approved. JA333–344 (Wells Decl.); JA345–352 (Lynch Decl.).

Denny's opposed, arguing that counsel's rates were unreasonably high and that certain billing entries were inappropriate or non-compensable. Workers' counsel replied, agreeing to the reduction of certain billed hours, but submitting an additional declaration in defense of the hourly rates submitted by Lynch Carpenter. JA327–332 (Etzel Decl.). Specifically, counsel clarified that Lynch Carpenter's practice was strictly limited to contingent fee cases and that the firm's practice was national in scope, but that the firm maintained one set of rates for all cases, rates which had been calibrated to account for the firm's need to continue practicing in distant jurisdictions and the high degree of risk inherent in the firm's case types. JA327–29 ¶¶ 4–9. Counsel also

explained that several of its top partners had in recent years been leading some of the largest MDL class actions in the nation, including the prominent *In re: Philips CPAP, Bi-Level PAP, and Mechanical Ventilator Products Liability Litigation*, 2:21-mc-1230, MDL No. 3014 (W.D. Pa.). JA330–31 ¶¶ 11–17.

The District Court ordered Class Counsel to submit additional "evidence of the prevailing market rate in Pittsburgh for legal services similar to those provided by Plaintiff's counsel in this case." JA543 at Dkt. 345. Counsel complied, submitting five declarations from other Pittsburgh-based practitioners who primarily engaged in plaintiff-side litigation. JA135–317. Denny's submitted one declaration from a Steptoe & Johnson partner, Marcia L. Telek DePaula, who suggested a significantly lower hourly rate range. JA22.[2]

The District Court issued its decision on fees on April 4, 2025. JA9. It held that Lynch Carpenter's hourly rates were "not representative of a reasonable market rate for complex litigation in the Pittsburgh legal market," JA22, so it reduced the rates of each attorney

---

[2] Attorney DePaula's practice "is a unique blend of litigation prevention and litigation defense." *See* https://www.steptoe-johnson.com/bio/marcia-l-depaula/ (accessed Nov. 7, 2025).

by 15–25%. JA23. After making additional exclusions of certain billed items, the District Court entered a total fee award of $982,998.25. JA30.

After approving the partial settlement, the District Court then promptly entered final judgment against Denny's in the amount of $4,009,472.57 (the Workers' judgment, plus the attorney fees' award). JA6. Denny's and the Workers both timely appealed. JA1–4.

## SUMMARY OF THE ARGUMENT

Denny's asks this Court to disregard both long-standing Third Circuit and Supreme Court precedent and the plain language of both the FLSA and PMWA. It does this in order to excuse its failure to pay the full minimum wage to hundreds of its Workers for multiple years. However, Denny's does not get to decide which parts of a statute are mandatory. As the Third Circuit has held, and "[l]est we forget, '[t]he place to make new legislation, or address unwanted consequences of old legislation, lies in Congress.'" *United States v. Jabateh*, 974 F.3d 281, 297 (3d Cir. 2020) (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 680–81 (2020)). Respectfully, Denny's policy-laden arguments should be made to legislatures, not this Court.

Denny's arguments as to Article III standing are meritless efforts to recharacterize the Workers' unlawfully withheld wages as mere "procedural" or "informational" injuries. They are not. The Workers suffered a direct financial deprivation because Denny's did not pay them the full hourly wage they were entitled to earn. A financial loss in the form of underpaid wage is a classic Article III injury. Unsurprisingly, Denny's fails to identify a single case holding that an employer's allegedly illegal underpayment of wages is not an Article III injury. Denny's Article III arguments also improperly rely on counterfactual or irrelevant premises—i.e., the Workers suffered no injury if it is assumed Denny's was entitled to claim the tip credit; or, the Workers suffered no injury because they received tips from customers that Denny's should be given credit for. Neither premise is valid, so Denny's argument fails.

As to the merits of its statutory violations, Denny's argues that it is absurd to read the FLSA and PMWA as requiring an employer to provide complete notice, including about the employer's obligation to provide notice of giving notice. But this argument assumes Denny's can decide what parts of the law to follow. Further, Denny's has, at multiple

times, fully obeyed the very statutes it now asks this Court to rewrite via judicial fiat. Both before and after the Class Period, Denny's ETCN and IITE forms gave tipped employees the very information Denny's argues that the statutes do not require to be given.

There is nothing absurd with requiring strict compliance to legal requirements that, if satisfied, grant an employer the ability to pay workers less than $3 per hour. Under federal law, compliance with the tip credit rule allow employers to pay a cash wage as low as $2.13 per hour—a generous, employer-friendly policy. As the First Circuit held, even "[i]f the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide." *Martin v. Tango's Restaurant, Inc.,* 969 F.2d 1319, 1323 (1st Cir. 1992). And the penalty for noncompliance is not even harsh—the employer must simply pay its employees the standard *minimum wage.*

As this Court held over thirty years ago, "only if the employer informs the tipped employee that her wage is being decreased under section 3(m)'s tip-credit provision" can an employer utilize the tip credit; if the employer does not comply with Section 203(m), "then no tip credit can be taken and the employer is liable for the full minimum-wage[.]"

*Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994). Courts do not "have discretion to waive the notice requirement" and thus cannot provide an "equitable . . . offset for tips" to be utilized. *Id.*, at 404.

At bottom, Denny's wants this Court to ignore the language of the FLSA and PMWA and overlook its noncompliance with a clear requirement. This Court should not entertain that request.

This Court should, however, reverse the District Court's denial of prejudgment interest. Under Pennsylvania law, prejudgment interest is a matter of right in cases involving a defendant's breached obligation to pay the plaintiff an ascertainable sum as of a date certain. This case fits that description. Pennsylvania state and federal courts have acknowledged that this rule applies specifically to an employer's withholding of pay, or, at a minimum, there is a strong presumption in such cases in favor of awarding prejudgment interest when the equities favor the plaintiff. And they do here, because awarding prejudgment interest is the only way to ensure the Workers receive equivalent value now, as if they had been paid properly between 2016 and 2019. In the meantime, Denny's has had free use of the withheld wages, and will stand to gain if it is only required to pay 2019 wages with 2026 dollars.

Finally, this Court should vacate the District Court's order regarding attorney fees. The District Court's determination that Lynch Carpenter's rates were unreasonable for the Pittsburgh market failed to account for the fact that Lynch Carpenter's rates are calibrated to account for their exclusive focus on contingent fee representation in complex and high-risk cases across the nation. Pennsylvania law instructs courts to consider the contingent nature of the representation as a factor in determining a reasonable fee, but the District Court did not do so, and instead reduced Lynch Carpenter's rates to fall more in line with the rates charged by non-contingent fee lawyers in Pittsburgh, despite Lynch Carpenter's evidence that their rates had been approved in numerous contemporaneous cases in Pittsburgh and elsewhere. In light of these errors and the District Court's failure to analyze other mandatory factors on the record, such as the reasonableness of the fee request compared to the recovery for the class, this Court should order reconsideration of the attorney fee award.

## ARGUMENT

### III. Wintjen and the Workers have Article III standing.

"Standing is a jurisdictional question that we review de novo." *Weichsel v. JP Morgan Chase Bank, N.A.*, 65 F.4th 105, 110 n.6 (3d Cir. 2023).

"Financial harm is a classic and paradigmatic form of injury in fact, and an allegation of financial harm almost always satisfies [Article III's] requirements." *Adam v. Barone*, 41 F.4th 230, 234 (3d Cir. 2022) (citations and internal quotation marks omitted).

As such, Wintjen and the Workers suffered a cognizable injury-in-fact. They were legally entitled to be paid a wage of $7.25 per hour by their employer, Denny's. They were not paid $7.25 per hour. Instead, Denny's paid them a sub-minimum wage, and inappropriately claimed a tip credit for the differential, without meeting the statutory requirements to do so.

Whether Denny's was entitled to pay this subminimum wage turns on whether it was entitled to claim a tip credit. Since, as the District Court correctly found, Denny's was *not* entitled to claim a tip credit, the Workers suffered injuries because they were paid less than

they were due. *See, e.g.*, *Reynolds v. Turning Point Holding Company, LLC,* 2020 WL 7336932, *5 (E.D. Pa. Dec. 14, 2020) (finding assertion of failure to provide tip credit notice was not "just a procedural violation; it involves financial harm.")[3]; *Elmer v. Kohli,* 2025 WL 99595, *5 (D. N.J. Jan. 14, 2025) (rejecting analogous standing argument as "meritless").

Simply put, violations of the minimum wage requirements of the FLSA and PMWA always cause an Article III injury, because the subject employees received less money than they were due from their employer. Denny's argument attempts to deflect away from the Workers' lost wages with faulty premises, first by suggesting that their injury is "informational," i.e., they did not receive the full tip credit notice. 1st Br. at 28. But that is not the Workers' Article III injury. Their injury is the wages they were owed and not paid by Denny's. Second, Denny's suggests that the Workers were not harmed because

---

[3] Denny's attempts to distinguish *Reynolds* by asserting that, there, "the employer did not provide *any* tip-credit information to its employees." *See* 1st Brief at 34. That is a complete misreading of *Reynolds*, as the court there took pains to describe the myriad ways the employer purportedly provided tip credit information to its employees. *Reynolds*, 2020 WL 7336932, *5. The issue in that case was whether the named plaintiff had received notice at all since she was not onboarded electronically, like other employees were, and thus, according to the court, was not typical of the proposed class. *Id.*, at *7.

the tips they received from customers meant that their total income exceeded the minimum wage. *Id.* at 30 ("Wintjen admits she was fully paid assuming Denny's was permitted to take a tip credit."). But that is a false premise. Wintjen was not paid the wages that Denny's owed her, nor was Denny's permitted to take a tip credit.

Under the FLSA, "any tip credits Defendants may have claimed that deprived Plaintiff of the minimum wage" being paid by the employer "were unlawful in the absence of proper notice." *St Louis v. Sugar Rush Inc.*, 2025 WL 2585569, *10 (E.D.N.Y. Aug. 18, 2025).[4] The amount of tips received from customers is irrelevant to this analysis. *Sec'y United States DOL v. Mosluoglu, Inc.*, 2023 WL 5972044, at *3 (3d Cir. Sept. 14, 2023) ("Evidence of actual tips received does not reduce an employer's liability" for failing to comply with the tip credit notification requirements). As this Court has long held, a "district court may not equitably reduce liability for back wages to account for tips actually received." *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 404 (3d Cir. 1994).

[4] Notably, in that case, the court dismissed the NY wage notice and statement claims for lack of standing but found liability under the FLSA tip credit notification claim.

"[T]he fact that Plaintiff's income may have exceeded the FLSA's minimum wage does not alleviate Defendants of their obligation to pay minimum wage if Defendants did not comply with § 203(m)(2)'s conditions." *Marquez v. Upstairs at Chef Vola, Inc.*, 2022 U.S. Dist. LEXIS 111281, *34 (D.N.J. June 23, 2022); *see also Kubiak v. S.W. Cowboy, Inc.*, 164 F. Supp. 3d 1344, 1355 (M.D. Fla. 2016) ("If an employer fails to satisfy *any* of these preconditions, the employer may not claim the tip credit, regardless of whether the employee suffered actual economic harm as a result.") (emphasis added).

Denny's posits that an employer may choose to fully comply with the notice requirement—as it did in 2011 and again from 2019 onwards—or ignore a "technical" part of it—which Denny's did during the intervening Class Period—all at the employer's convenience/discretion. Respectfully, that is an impermissible interpretation of statutory language, generally, and the language of the PMWA and FLSA in particular do not permit the employer to elect when to practice compliance. "Congress chose to allow employers a partial tip credit if, but only if, certain conditions are met." *Martin*, 969

F.2d at 1322. "The notice requirement is a firm one." *Reich,* 28 F.3d at 404.

The District Court rejected that novel concept and correctly held that Denny's did not comply with all the provisions of Section 203(m) and thus was not entitled to claim a tip credit. And with good reason. Accepting Denny's assertion that the fifth requirement set forth in Section 203(m) provides nothing to the employee's understanding and thus is not actually a mandated requirement blatantly ignores plain statutory construction. It is a "cardinal principle of statutory construction that courts must give effect, if possible, to every clause and word of a statute" when analyzing the statute at issue. *Williams v. Taylor*, 529 U.S. 362, 364 (2000); *Khan v. Attorney General of U.S.,* 979 F.3d 193, 199 (3d Cir. 2020) (same). Accordingly, Denny's cannot claim a tip credit, and it was required to pay the Workers the full minimum wage. Because it did not, they suffered a loss of money rightfully due to them, and therefore have standing.

## IV. The District Court did not err as to the FLSA's requirements.

### A. Rules of statutory construction require every provision to be given effect.

This Court reviews "the order granting summary judgment, including the factual and legal questions, de novo." *New Jersey Bankers Assoc. v. Attorney General New Jersey*, 49 F.4th 849, 854 (3d Cir. 2022).

"Because this appeal presents a question of statutory interpretation, '[a]s always, we start with the statutory text[.]'" *Lundeen v. 10 West Ferry Street Operations, LLC*, -- F.4th --, 2025 WL 2935340, *3 (3d Cir. Oct. 16, 2025) (quoting *Garland v. Cargill*, 602 U.S. 406, 415 (2024)). "If the meaning of the text is clear, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce [the statute] according to its terms." *In re FTX Trading Ltd.*, 91 F.4th 148, 153 (3d Cir. 2024) (citations and quotation marks omitted).

"It is the duty of the court to give effect, if possible, to every clause and word of a statute, avoiding, if it may be, any construction which implies that the legislature was ignorant of the meaning of the language it employed." *Inhabitants of Montclair Tp. v. Ramsdell*, 107

U.S. 147, 152 (1883). Within this Circuit, "courts should construe statutory language to avoid interpretations that would render any phrase superfluous." *U.S. v. Cooper,* 396 F.3d 308, 312 (3d Cir. 2005) (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted).

### B. The FLSA's plain text does not support Denny's.

Denny's asserts that the fifth requirement of Section 203 (m) is "recursive" surplusage and that courts can excuse employers from complying with it. That is not how statutes are drafted nor how they are to be interpreted. "Because Congress chose to include it, the phrase must be given meaning if possible." *U.S. v. Cooper,* 396 F.3d 308, 312 (3d Cir. 2005) (citing *Williams v. Taylor*, 529 U.S. 362, 407 (2000) (O'Connor, J., concurring) (Rather than render statutory language a nullity, "[w]e must, ... if possible, give meaning to every clause of the statute."). The plain meaning of the statutory language requires an employer to notify its employees of all five of the statute's distinct

requirements prior to claiming a tip credit.  Moreover, Denny's concedes "there is no dispute that the notice requirement language is in the FLSA." *See* 1st Br. at 49. Denny's simply wants the Court ignore it.

Furthermore, Denny's argument that the language is unnecessary "impermissibly implies that 'the legislature was ignorant of the meaning of the language it employed.'" *Holland as Trustee of UMWA 1992 Benefit Plan v. Arch Coal, Inc.*, 947 F.3d 812, 818 (Ct. of App. D.D.C. 2020) (quoting *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 186–87 (2004) (plurality opinion)). Denny's does not provide any sound legal argument for why this language can or should be ignored, but simply asserts that enforcement would lead to some sort of windfall for the employees. Setting aside the fact that adherence to the statute ensures the employees only receive what they are otherwise entitled to—the full minimum wage—Denny's argument effectively amounts to a request for judicial revision of the statute's requirements.

However, a court's "role in interpreting [a statute] is to '[g]ive effect to the text congress enacted,' not to 'rewrite the statute to reflect a meaning [the court] deem[s] more desirable.'" *U.S. v. Holy Land Foundation for Relief and Development*, 722 F.3d 677, 688–89 (5th Cir.

2013) (quoting *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008)). As the Supreme Court declared, "it is not the proper role of the courts to rewrite the laws passed by Congress and signed by the President." *Nasrallah v. Barr,* 590 U.S. 573, 583 (2020). Rather, as Justice Scalia articulated, courts "begin with the understanding that Congress 'says in a statute what it means and means in a statute what it says there.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) (quoting *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992)); *see also Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms.").

This is because judges "possess no special expertise or authority to declare for ourselves what a self-governing people should consider just or wise. And the same judicial humility that requires us to refrain from adding to statutes requires us to refrain from diminishing them." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 681 (2020). Indeed, "when the meaning of the statute's terms is plain," a court's "job is at an end. The people are entitled to rely on the law as written, without fearing that

courts might disregard its plain terms based on some extratextual consideration." *Id.,* at 674.[5]

As the Fourth Circuit held nearly fifty years ago, when analyzing Section 203(m):

> What the Congress has said, in effect, to restaurant employers is that, if you precisely follow the language of 3(m) and fully inform your employees of it, you may obtain a 50 percent credit from the receipt of tips toward your obligation to pay the minimum wage. The corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit. …We think the conclusion is compelled that the measure of damages … is payment of the applicable minimum wage in full.

*Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir. 1977). Similarly, this Court has long held strict compliance with Section 203(m) to be a "firm" requirement. *Reich*, 28 F.3d at 404 (holding the "notice requirement is a firm one."). Here, Denny's acknowledges both the

[5] Importantly, "'the fact that [a statute] has been applied in situations not expressly anticipated by Congress' does not demonstrate ambiguity; instead, it simply 'demonstrates [the] breadth' of a legislative command." *Bostock*, 590 U.S. at 674 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985)). "And 'it is ultimately the provisions of those legislative commands 'rather than the principal concerns of our legislators by which we are governed.'" *Bostock*, 590 U.S. at 674 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79 (1998)).

existence of the language in Section 203(m) requiring the fifth piece of information and that Denny's failed to "follow the command of the statute" by not providing that fifth piece of information. Denny's simply seeks to be excused from compliance, but that is not this Court's role.

Indeed, it has been the law in this Circuit for more than thirty years that, in the context of the FLSA, a district court does not "have discretion to waive the notice requirement in the interests of perceived fairness to the employer." *Reich*, 28 F.3d at 404. While such an ability is "perhaps not in itself an undesirable power for the district courts to have, it is not . . . what the statute permits." *Id.*

Denny's makes much of the fact that there is nothing in the legislative history regarding providing notice of the notice. However, that "fact" is of no moment. "[T]he authoritative statement is the statutory text, not the legislative history." *Knepper v. Rite Aid Corp.,* 675 F.3d 249, 259 (3d Cir. 2012) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 568 (2005)). When "the statutory language of [a statute] is clear, [courts] decline to look beyond its text for guidance." *U.S. v. Holy Land Foundation for Relief and Development*, 722 F.3d 677, 689 (5th Cir. 2013) (citing *Milner v. Dep't of*

*the Navy*, 562 U.S. 562, 572 (2011)). As this Court has previously held, "we do not need to go beyond the plain text in interpreting" the FLSA. *Knepper,* at 260; *see also Lundeen,* 2025 WL 2935340, at *4 (finding "plain text" of FLSA limits its reach). As the statutory language at issue in this matter is, even by Denny's admission, unambiguous, the legislative history is irrelevant.

Additionally, Denny's contention that no court, other than the District Court below, has held that all five pieces of information must be provided is not accurate. In *Perez,* the district court declined to dismiss a complaint, holding that it "explicitly" alleged that the employer "failed to inform [employees] of the provisions of section 203(m)" and thus plausibly stated a claim. *Perez v. Prime Steak House Restaurant Corp.*, 939 F. Supp. 2d 132, 138–39 (D. P.R. 2013). Notably, the *Perez* court addressed the notice claim prior to the 2011 amendment. *Id.* at 138. Denny's reliance on *Kilgore v. Outback Steakhouse of Fl., Inc.*, 160 F.3d 294 (6th Cir. 1998) is unavailing. In that case, the employer provided, among other things, a policy that "fully quoted subsection 3(m) of the FLSA, 29 U.S.C. § 203(m)." *Id.*, at 299. Here, it is indisputable that

Denny's did not provide all of the information set forth in Section 203(m).

Finally, it is not for a court "to rewrite the statute so that it covers only what [the court] think[s] is necessary to achieve what [the court] think[s] Congress really intended." *Lewis v. City of Chicago, Ill.,* 560 U.S. 205, 215–16 (2010) (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 79–80 (1998)). After all, it is not a court's "task to assess the consequences of each approach and adopt the one that produces the least mischief"; rather, a court's "charge is to give effect to the law Congress enacted." *Lewis*, 560 U.S. at 217. That is precisely what the District Court did—give effect to the law as written.

In sum, the FLSA is strictly construed, and rightfully so given that it is a remedial statute designed to guarantee basic worker protections and minimum wages. Denny's failure to comply with all the requirements of Section 203(m) should not be excused – especially when it previously complied with the statute in both 2011 and again in 2019. *See, e.g., Richard*, 549 F.2d at 305 ("a vague sense of fairness" for the employer "cannot be reconciled with the language of" Section 203(m)).

### C. The regulation does nothing more than restate the statute.

Denny's asserts that the District Court erred when it relied upon the Department of Labor Regulation, 29 C.F.R. § 531.59(b). This argument conflicts with longstanding precedent from this Circuit and is without merit.

As this Court held long ago, "[i]t would be quite extraordinary if we were to deviate from the interpretation given a statute by an administrative agency simply because the administrative interpretation did no more than implement the plain meaning of the statute." *Smith v. Fidelity Consumer Discount Co.*, 898 F.3d 907, 913 (3d Cir. 1990). In *Smith,* the regulation at issue did "no more than mimic the statutory language", which the Third Circuit found to be "precisely the point" as the administrative agency "simply interpreted the statutory language in accordance with its literal meaning." *Id.* Ultimately, the Third Circuit gave deference to the administrative agency because its interpretation was "faithful to the text of the statute and advances one of Congress' stated purposes for enacting" the statute. *Id.* at 914.

Courts have found Section 531.59(b) simply restates what is set forth in the statute. *See, e.g.*, *National Restaurant Ass'n v. Solis*, 870 F.

Supp. 2d 42 (D.D.C. 2012). As one court noted regarding the five requirements, "the specific disclosures required by the final amended rule come directly from the text of the statutory provisions of section 203(m), which is apparent in a side-by-side comparison of the text." *Howard v. Second Chance Jai Alai LLC,* No. 15-cv-200, 2016 WL 3349022, *4 (M.D. Fl. June 16, 2016).

In the instant matter, the District Court noted that the applicable regulation, Section 531.59(b), did no more than restate the requirements of Section 203(m) of the FLSA. JA81, JA119. Moreover, "the Department of Labor's regulation comports with the plain text of the statute and aids the Court's interpretation" and thus should not be cast aside. *Karonka v. Asuka Blue Investment, LLC,* No. 23-CV-02891, 2024 WL 4905985, *3 (S.D. Tex. Nov. 27, 2024) (relying on 29 C.F.R. § 531.59(b) in court's determination that plaintiff had stated a plausible claim, notwithstanding Supreme Court's *Loper Bright* decision).

Based on the *Smith* precedent, this Court should find no error in the lower court's analysis.

### D. Denny's reliance on *Schaefer* is misplaced

Denny's relies heavily on the Seventh Circuit decision, *Schaefer v. Walker Bros. Enterprises, Inc.*, 829 F.3d 551 (7th Cir. 2016). However, *Schaefer's* application is limited to the state of the law before May 2011. *Schaefer v. Walker Bros. Enters.*, 829 F.3d 551, 556 (7th Cir. 2016) (limited to events before May 2011, when regulation "took effect" wherein "all five pieces of information are required"). Indeed, even the employer in *Schaefer* began providing all five pieces of information after the issuance of the regulation. *Schaefer*, 829 F.3d at 556 ("Since May 2011 the restaurants have told their servers all five of these things, using language provided by the Department of Labor and required by a regulation that took effect that month." (citing 29 C.F.R. § 531.59(b)). Moreover, other courts have noted that in *Schaefer*, the employer engaged in a robust notice process by providing the employee with a "handout and a handbook . . . that demonstrated how the tip credit worked." *Hoffman v. Bear Chase Brewing Co., LLC*, 2023 WL 384293, *6 (E.D. Va. Jan. 18, 2023) (citing *Schaefer*, 829 F.3d at 557).

*Schaefer* reflects blatant judicial revisionism and second-guessing the judgment of Congress and DOL in crafting the statute and

regulation. *See Schaefer*, 829 F.3d at 556–57 (opining that that the "fifth" requirement "does not add anything to the worker's fund of knowledge (unless the worker is studying to be a lawyer…)," that it is "kinder" not to explain the tip pool rules to employees at all unless the employer uses tip pooling, and that only three pieces of information are "apt to matter most to employees."). This policy-focused approach violated basic interpretative canons and exceeded the proper role of the court. *See U.S. v. Cooper,* 396 F.3d at 312 ("courts should construe statutory language to avoid interpretations that would render any phrase superfluous."). It also conflicts with this Circuit's command to follow the plain language of a statute. *See, e.g.*, *New Jersey Bankers Assoc.*, 49 F.4th at 857 (holding that when the legislature's "will has been expressed in language that has a reasonable plain meaning, that language must ordinarily be regarded as conclusive") (quoting *Byrd v. Shannon*, 715 F.3d 117, 122 (3d Cir. 2013)).

Moreover, *Schaefer* does not comport with decisions from within this Circuit that found the statute and regulation to plainly require all five pieces of information to be provided, because that is what their text says. *See, e.g.*, *Sec'y United States DOL v. Mosluoglu, Inc.*, 2023 U.S.

App. LEXIS 24385, *7 (3d Cir. Sept. 14, 2023) ("an employer can take advantage of" the tip credit "only if its employees have 'been informed by the employer of the [Section 203(m)(2)] provisions[.]'" (quoting 29 U.S.C. § 203(m)(2)(A)(ii)) (brackets in original); *Walsh v. La Tolteca Wilkes Barre, Inc.*, 2023 U.S. Dist. LEXIS 218430, *7–8 (M.D. Pa. Dec. 6, 2023) (granting summary judgment where wage notification forms did not include all the required language in 29 C.F.R. § 531.59(b)), including that "the tip credit shall not apply to any employee who has not been informed of these requirements in this section").

Moreover, other circuit courts have noted that all five pieces of information must be provided. *See, e.g.*, *Rafferty v. Denny's, Inc.*, 13 F.4th 1166, 1192 (11th Cir. 2021) ("By its terms, [29 C.F.R. § 531.59(b)] requires the employer to inform the employee of five things"); *Perez v. Lorraine Enters.*, 769 F.3d 23, 27 (1st Cir. 2014) ("It is the employer's burden to show that it has satisfied all the requirements for tip-credit eligibility" with a "failure to satisfy any of these requirements expos[ing] the employer to liability for wages owed"); *Doty v. Elias*, 733 F.2d 720, 722, 724 (10th Cir. 1984); *Ettorre v. Russos Westheimer, Inc.*, No. 21-20344, 2022 U.S. App. LEXIS 7295, *5–6 (5th Cir. Mar. 18, 2022)

(citing, *inter alia*, 29 U.S.C. 203(m) and holding that "an employer must inform tipped employees . . . that the tip credit shall not apply to any employee who has not been informed of all" the tip credit's requirements). Denny's offers no sound basis for this Court to create a circuit split.

## V. The District Court did not err as to the PMWA.

### A. The text of PMWA parallels the FLSA.

As this Court has explained, when determining whether to look to the FLSA for guidance in determining how to interpret a PMWA exemption:

> [W]hen the PMWA substantially parallels the [FLSA], Pennsylvania courts look to federal courts' interpretation of the parallel FLSA provision for guidance. …
>
> In this instance, the state and federal exemptions are worded nearly identically. It cannot be doubted that the two provisions are parallel. Accordingly, Pennsylvania law instructs that interpretation of the PMWA's exemption is informed by case law interpreting the parallel FLSA exemption.

*Livi v. Hyatt Hotels Corp.*, 751 F. App'x 208, 210–11 (3d Cir. 2018). Here, the FLSA and PMWA are worded nearly identically. *Compare* 29 U.S.C. 203(m)(2) *with* 43 P.S. § 333.103(d). Thus, there can be no doubt

that the two provisions are parallel. *Reynolds v. Chesapeake & Delaware Brewing Holdings, LLC,* 2020 WL 2404904, *8 (E.D. Pa. May 12, 2020) (noting "PMWA and FLSA provisions regarding the wages to be paid to tipped employees are substantially parallel"); *see also Com. v. Stuber,* 822 A.2d 870, 873 (Pa. Commw. Ct. 2003) (noting that the PMWA "mirrors" the FLSA and that both are "designed to protect employees who do not have real bargaining power.").

Denny's asserts that the language in the PMWA is redundant and thus should be ignored. However, that is not how this Court has directed lower courts to interpret the PMWA. As stated in *Espinoza*:

> To effectuate the intent of the legislature, we must start with the text. The rules of construction specifically state that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded." 1 Pa. Cons. Stat. § 1921(b); *see also Commonwealth v. Jarowecki*, 604 Pa. 242, 985 A.2d 955, 959 (2009). When the language in question does not include technical phrases, we must construe it "according to [its] common and approved usage," 1 Pa. Cons. Stat. § 1903(a), and in a manner that avoids surplusage, id. § 1922(2).

*Espinoza v. Atlas Railroad Construction, LLC*, 657 F. App'x 101, 104 (3d Cir. 2016) (footnote omitted).

Interpreting the Pennsylvania wage and hour law as the District Court did "comports with the Pennsylvania rules of construction as it

gives meaning to the entire phrase" set forth in the PMWA. *Espinoza,* 657 F. App'x at 107. For the same reasons applicable to Denny's arguments about the FLSA, the Court should likewise reject Denny's request to render part of the PMWA superfluous.

This is especially true because the tip credit provision of the PMWA substantially parallels the tip credit provision of the FLSA. *Compare* 29 U.S.C. § 203(m)(2) *with* 43 P.S. § 333.103(d). As the District Court noted, the additional language contained in the PMWA, if anything, makes the PMWA more onerous. JA79–80. Accordingly, "[w]hen the PMWA 'substantially parallels' the FLSA, Pennsylvania and federal courts have used FLSA law for interpretative guidance because the statutes have similar purposes." *Espinoza,* 657 F. App'x at 105; *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 871 n.4 (3d Cir. 2015)).

Indeed, courts have found the PMWA's provision to "substantially parallel" the FLSA even when the language is not identical, provided the essential ideas and terms of art are the same. *See, e.g.*, *Mazzarella v. Fast Rig Support, LLC*, 2014 WL 2861027, at **3–4 (M.D. Pa. June 23, 2014) (treating motor carrier exemption under PMWA as

coextensive with federal motor carrier exemption despite different language); *Vanstory–Frazier v. CHHS Hosp. Co., LLC*, 2010 WL 22770, at *9 (E.D. Pa. Jan 4, 2010) (noting that although many of "the[ ] exemptions under the PMWA are not identical to FLSA's criteria, ... the tests are sufficiently similar that the court's analysis regarding the FLSA exemptions also applies to the PMWA exemptions"). Simply put, "[s]tatutes are read *in pari materia* when they relate to the same persons or things or to the same class of persons or things and must be construed together if possible." *Masterson v. Federal Exp. Corp.*, 2008 WL 5189342, *3 (M.D. Pa. Dec. 10, 2008) (citing 1 Pa. Cons. Stat. § 1932).

Denny's quotes *Golfview* for the proposition that PMWA recognizes tips as an acceptable way to meet the employer's minimum wage obligation, "provided the employee knows of the practice and directly receives these tips." *See* 1st Br. at 53–54 (quoting *Golfview Manor, Inc. v. Commonwealth, Dep't of Labor & Ind.*, 414 A.2d 722, 725 (Pa. Commw. Ct. 1980)). Yet, *Golfview* actually belies Denny's position, as the *Golfview* Court cited with approval the notice requirement at issue in this matter: 43 P.S. § 333.103(d). *See Golfview,* 414 A.2d at 725

n.10. Moreover, as the District Court aptly noted, the *Golfview* court "conducted no analysis of the statute's notice provision." JA80.

Accordingly, this Court should give meaning to every word in the PMWA and find that, like the FLSA, Denny's failed to provide all the necessary information required prior to claiming a tip credit. As such, this Court should affirm the District Court's decisions.

## VI. The Workers' Rule 23 class was appropriately certified.

An appellate court reviews the grant of class certification for abuse of discretion. *Reining v. RBS Citizens, N.A.*, 912 F.3d 115, 124 (3d Cir. 2018). In the matter below, the District Court did not abuse its discretion, as its grant of class certification was based on a thorough review of the record and predicated on established case law. JA82–99.

Because the same precise issue applies to all the Workers equally—whether Denny's provided complete and accurate information in conformity with the PMWA—the predominance requirement of Rule 23 was easily met. As such, the District Court appropriately certified the Class.

Denny's makes only two arguments against class certification. The first is that the District Court erred in finding that the PMWA requires

the fifth piece of information. 1st Br. at 59–60 ("*If* the district court is wrong … and the PMWA does not require notice about the notice requirement, *then* class treatment is not appropriate…") (emphasis added). This conditional argument fails because the District Court did not err in its interpretation of the PMWA, as explained above. All five pieces of information must be provided to employees, and the undisputed facts show that Denny's did not provide the fifth piece to the Workers.

All Workers received the same four pieces of information, and the fifth piece of information was not provided to any of the Workers. JA92–94. Notably, the District Court modified the class definition so as to remove any individual who was provided the fifth piece of information in 2011, 2019, or thereafter. Because Denny's acknowledges the fifth piece of information was not provided to any Workers in the class, JA371–72 ¶¶ 28–29, class certification was, and remains, appropriate.[6] *Cf. Wilson v. Wings Over Happy Vally MDF, LLC,* 2020 869889, *6 (M.D. Pa. Feb. 21, 2020) (as plaintiffs "rely almost exclusively" on a

[6] As noted above, the *Reynolds* court refused to certify a class only because it found that plaintiff's claims were not typical due to her unique onboarding situation.

policy that "was verbally communicated" to employees, whether each employee was subjected to such policy "would require individualized inquiries into" what each individual was told thereby rendering class certification inappropriate).

Denny's second argument is that Wintjen is an inadequate class representative because she does not have the same financial stake as other class members, or because she lacks standing. 1st Br. 63–64. These arguments are meritless. Wintjen has standing for the same reason as all Workers—Denny's failed to pay her the minimum wages she was owed. And Wintjen's financial stake in the PMWA judgment is the same, proportionally, as all Workers—the number of hours she worked, multiplied by the amount of tip credit Denny's claimed for each hour. JA354 (indicating that Wintjen worked 298.43 hours and that Denny's claimed a credit of $1,319.08 for those hours).

## VII. The Workers are entitled to prejudgment interest.

This Court reviews a district court's denial of prejudgment interest for abuse of discretion. *Pignataro v. Port Auth. of New York & New Jersey*, 593 F.3d 265, 273–74 (3d Cir. 2010).

The District Court denied the Workers' request for prejudgment interest because, in its view, "[t]here is no controlling precedent that permits Ms. Wintjen and the class to receive prejudgment interest as a matter of right." JA34. The district court erred on two fronts.

First, Pennsylvania common law entitles the Workers to prejudgment interest as a matter of right because their claim—though authorized and governed by the PMWA—is fundamentally contractual in nature and concerns specific sums of money Denny's was obligated to pay the Workers by dates certain. When those conditions are met by a prevailing plaintiff's claim, courts applying Pennsylvania law do not have discretion to deny prejudgment interest. *KEM Res., LP v. Deer Park Lumber, Inc.*, 283 A.3d 362 (Table), 2022 WL 2717774, at *6 (Pa. Super. Ct. 2022) ("[A] plaintiff in a contract action for failure to pay a liquidated sum has right to prejudgment interest over which the court has no discretion."). The fact that Denny's duty to pay arises from the PMWA's mandatory wage requirement, rather than an independently negotiated contract, does not countermand the application of Pennsylvania's prejudgment interest precedents.

Second, even if this Court disagrees that this case is contractual in nature and holds that the District Court was not *required* to award prejudgment interest, it should nevertheless find that the District Court's failure to do so was an abuse of discretion. This Court and Pennsylvania courts have repeatedly held that prejudgment interest is presumptively appropriate in backpay cases unless equitable considerations weigh in the defendant's favor. *E.g.*, *Pignataro*, 593 F.3d at 274 ("There is a presumption in favor of awarding prejudgment interest on a back pay award under the FLSA. … If prejudgment interest is denied, the District Court must explain why the usual equities in favor of such interest are not applicable.") (citing *Brock v. Richardson*, 812 F.2d 121, 126–27 (3d Cir. 1987)).

The District Court did not follow that approach, nor did the District Court explain its reasoning beyond noting its erroneous belief that it was not authorized to award interest. Equity plainly favors the Workers here because Denny's underpaid them by more than $3 million collectively and enjoyed the benefit of using that money for many years. Failing to award prejudgment interest in these circumstances weakens the protections of the PMWA and prevents the Workers from receiving

make-whole relief, for the obvious reason that a dollar today is worth less than it was worth from 2016 to 2019, which is when these Workers should have been paid. "Prejudgment interest, of course, is 'an element of complete compensation.'" *Loeffler v. Frank*, 486 U.S. 549, 558 (1988) (quoting *West Virginia v. United States*, 479 U.S. 305, 310 (1987)).

For these reasons, and as explained in more detail below, the District Court's denial of prejudgment interest was legal error and an abuse of discretion.

### A. Under Pennsylvania law, prejudgment interest is due as of right to a prevailing plaintiff in an unpaid wage case.

"For over a century it has been the law of this Commonwealth that the right to interest upon money owing upon a contract is a legal right.... That right to interest begins at the time payment is withheld after it has been the duty of the debtor to make such payment." *Fernandez v. Levin*, 548 A.2d 1191, 1193 (Pa. 1988) (citing *West Republic Mining Co. v. Jones & Laughlins*, 108 Pa. 55 (1885), and *Palmgreen v. Palmer's Garage, Inc.*, 117 A.2d 721 (Pa. 1955)). "Whenever a fixed sum of money is wrongfully withheld from a party to whom it is properly due, such party is entitled to interest." *Nagle*

*Engine & Boiler Works v. City of Erie*, 38 A.2d 225, 228 (Pa. 1944) (citation and quotation marks omitted).

In *Penneys v. Pennsylvania R. Co.*, 183 A.2d 544, 546 (Pa. 1962), the Pennsylvania Supreme Court expressly endorsed the interest rule reflected in the Restatement:

> If the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract as follows:
>
> (a) Where the defendant commits a breach of a contract to pay a definite sum of money, or to render a performance the value of which in money is stated in the contract or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, interest is allowed on the amount of the debt or money value from the time performance was due, after making all the deductions to which the defendant may be entitled.
>
> (b) Where the contract that is broken is of a kind not specified in Clause (a), interest may be allowed in the discretion of the court, if justice requires it, on the amount that would have been just compensation if it had been paid when performance was due.

Restatement (First) of Contracts § 337 (1932).

This principle applies here because when an employee sues an employer for underpayment of wages, the action is equivalent to a breach of contract claim, and the amount due is definite. The only

material difference between a PMWA claim and an employee's breach of contract claim for failure to pay all agreed compensation is that in the former, the worker must rely on the statute's protections in order to seek the bare minimum amount of compensation allowed by law; whereas in the latter, the employee was able to secure an employer's promise of higher payment through private contract.

The elements of a PMWA claim parallel a breach of contract claim, with the only difference being that the PMWA supplies some material terms, rather than a private agreement. "To state a claim for unpaid wages under the PMWA, a plaintiff must prove three elements: (1) the plaintiff was an employee; (2) the defendant was the plaintiff's employer; and (3) the defendant failed to pay the plaintiff the wage required by the PMWA." *Beauregard v. Broadway Elec. Serv. Corp.*, 2022 WL 2293969, at *5 (W.D. Pa. June 24, 2022) (citing 43 P.S. § 333.103 (defining "employer" and "employe[e]"); and *id.* § 333.104 (setting forth minimum and overtime wages)). A breach of contract claim in Pennsylvania requires the plaintiff to establish: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v.*

*Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

A PMWA plaintiff who proves an employment relationship with a defendant has also satisfied the first element of a contract claim, the existence of an agreement. The employee has agreed to perform work, and the employer has at least implicitly agreed to pay no less than minimum wage. Even if the employer does not expressly agree to pay any particular wage, the PMWA supplies mandatory terms that the parties cannot agree to avoid. "The whole point of the FLSA and the PMWA is to protect workers by overriding contractual relations through statute." *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229–30 (3d Cir. 2019) (citing 43 Pa. Stat. § 333.101 (declaring that employees covered by the protections of the PMWA "are not as a class on a level of equality in bargaining with their employers in regard to minimum fair wage standards, and 'freedom of contract' as applied to their relations with their employers is illusory.")); *see also* 43 Pa. Stat. § 333.113 ("any agreement between the employer and the worker to work for less than such minimum wage shall be no defense.").

Thus, if a PMWA plaintiff establishes the employment relationship element and then proves that the employer paid an amount less than the minimum wages required by the PMWA, that plaintiff will have satisfied the second and third elements of a breach of contract claim—the defendant's breach of a duty to pay, and the employer's damages. Again, when it comes to actions for underpayment of wages, the only significant difference between a PMWA claim and a breach of contract claim is that the statute supplies the employer's duty to pay, rather than a privately negotiated agreement.

The District Court declined to apply a Pennsylvania case cited by the Workers, *Andrews v. Cross Atlantic Capital Partners, Inc.*, 158 A.3d 123 (Pa. Super. Ct. 2017), which recognized that "in a contract action, an award of prejudgment interest does not depend on discretion, but is a legal right and must be awarded despite the good faith of the party contesting the claim." *Id.* at 136. The District Court's belief that *Andrews* is inapplicable because it is a "contract" case and the PMWA does not expressly mention prejudgment interest is erroneous. Critically, the District Court overlooked that *Andrews* is directly on point because it involved a dispute over unpaid wages, just like this

case, and affirmed the appropriateness of prejudgment interest on a backpay award, even in the absence of express statutory authorization, just like this case. In fact, the Superior Court further clarified that the liquidated damage provision of the WPCL is "not a substitute" for prejudgment interest in wage cases:

> Although Andrews received prejudgment interest under his breach of contract claim for unpaid wages, he is not precluded from recovering liquidated damages under the WPCL. … Prejudgment interest compensates an employee for the injury sustained due to delayed payment of wages and a liquidated damages award represents damages due to an employer's lack of good faith in withholding past wages.

*Id.* at 137.

Distinguishing *Andrews* as a "breach of contract" case, as the District Court did, is to miss the forest for the trees. What matters is not the label on the cause of action, but rather the general nature of the claim and the nature of the disputed sum. *See Nagle*, 38 A.2d at 228 ("The weight of authority is in accord with our Pennsylvania decisions, which hold that where the action is *not for a tort or to recover for unliquidated damages*, but is under a contract claiming a definite amount, interest is due from the date the money was payable.") (emphasis added, citation and quotation marks omitted).

In this regard, claims for specific unpaid minimum wages under the PMWA belong firmly on the "contract" side of the divide, not the "tort" or "unliquidated damages" side. For purposes of determining whether Pennsylvania law requires payment of prejudgment interest, the Workers' action for unpaid wages under the PMWA was fully the same as a "contract" claim.

Because backpay damages are typically for a liquidated amount that was due at a certain time, they meet the criteria for application of prejudgment interest as of right under Pennsylvania law, and accordingly they are routinely awarded irrespective of the specific cause of action. This Court has noted "a presumption in favor of awarding prejudgment interest on a back pay award under the FLSA," the federal statute the PMWA parallels. *Pignataro*, 593 F.3d at 274 (citing *Brock v. Richardson*, 812 F.2d 121, 126 (3d Cir. 1987)). Notably, like the PMWA, the FLSA does not expressly authorize prejudgment interest.

At least one Pennsylvania federal District Court directly evaluated whether prejudgment interest was recoverable for a PMWA claim, and concluded that it was. *Friedrich v. U.S. Computer Systems, Inc.*, 1995 WL 412385, at *3 (E.D. Pa. July 10, 1995). The *Friedrich*

court drew from (i) FLSA caselaw, (ii) Pennsylvania's basic prejudgment interest rule for contract claims as stated in *Nagle*, and (iii) the fact that prejudgment interest serves the statute's purposes by insuring full payment to employees through mitigating the loss in value caused by delay in payment, and removing an employer's incentives to wrongfully withhold payment. *Friedrich*, 1995 WL 412385, at *3.

The *Friedrich* court's reasoning on this point was sound, and for thirty years, no Pennsylvania state court has criticized it. In fact, the Superior Court cited its conclusion with approval. *Signora v. Liberty Travel, Inc.*, 886 A.2d 284, 296 (Pa. Super. Ct. 2005) ("We are in agreement with the result reached by, and we adopt the reasoning of the federal court in *Friedrich, supra,* and conclude that the trial court did not err in restricting recovery to interest under the MWA."), overruled on other grounds by *Andrews*, 158 A.3d at 134–36 & 136 n.23 (overruling the *Signora* court's holding that a plaintiff cannot recover *both* prejudgment interest and liquidated damages under the WPCL).

Although the cases above reflected splits of authority regarding whether a plaintiff can recover *both* prejudgment interest and liquidated damages under the FLSA or WPCL, there does not appear to

be any dispute among Pennsylvania courts that prejudgment interest is awardable to a prevailing PMWA claimant. *See Signora*, 886 A.2d at 296; *see also Leclair v. Diakon Lutheran Soc. Ministries*, 2013 Pa. Dist. & Cnty. Dec. LEXIS 1, *10 (Lehigh Cnty. C.C.P. Jan. 14, 2013) ("A plaintiff who prevails on claims for unpaid wages under the PMWA is entitled to prejudgment interest").

Indeed, for its opposition brief before the District Court, (Dist. Ct. Dkt. 325), Denny's was unable to locate a single case holding that prejudgment interest cannot be awarded to a prevailing PMWA plaintiff, pointing only to one decision by the same district judge, which similarly declined to apply prejudgment interest "in the absence of controlling precedent." *McDonnell v KRG Kings LLC*, 2024 WL 3082737, at *2 (W.D. Pa. June 21, 2024) (Wiegand, J.).

As shown above, the Workers' backpay recovery is within the ambit of the common law rule in Pennsylvania that prejudgment interest is a matter of right to a prevailing plaintiff who establishes the defendant owed a definite sum of money on a date certain. The Workers here did that. Between January 22, 2016 and January 1, 2019, the Workers collectively worked 685,163.1 hours for Denny's, and for each

of those hours, Denny's illegally relied on the tip credit to pay a subminimum wage of $2.83 an hour, which is $4.42 per hour less than the Workers were entitled to earn. JA354 ¶¶ 2–3. As a result, the parties agreed that Denny's withheld $3,026,474.32 in wages from the Workers during the Class Period by relying on the tip credit. JA354 ¶ 4.

To simplify the interest calculation on this amount, the Workers limited their request and asked only for interest to accrue as of the end of the overall Class Period (*i.e.*, the last day any class member was subjected to the violation). Using Pennsylvania's 6% statutory interest rate, the Workers are due $181,588.46 per year in interest, starting no later than August 1, 2019.

Because prejudgment interest is a matter of right under Pennsylvania law, and the Workers' claim was for a liquidated amount due from Denny's on dates certain, the District Court abused its discretion in declining to award the Workers interest on their judgment.

### B. If awarding prejudgment interest was merely discretionary, then the District Court abused its discretion.

Even if the Workers were not entitled to prejudgment interest as of right, the District Court nevertheless abused its discretion because it

ignored the presumption in favor of prejudgment interest and failed to conduct any equitable analysis. As this Court has held numerous times in the FLSA context, "[t]here is a presumption in favor of awarding prejudgment interest on a back pay award … If prejudgment interest is denied, the District Court must explain why the usual equities in favor of such interest are not applicable." *Pignataro*, 593 F.3d at 273 (citing *Brock*, 812 F.2d at 126–27); *see also Hodgson v. Wheaton Glass Co.*, 446 F.2d 527, 534 (3d Cir. 1971) (reasoning that despite the FLSA's silence on prejudgment interest, when liquidated damages are unavailable "there is no reason why the order of the equity court should not include compensation, by way of interest, for the money wrongfully withheld.").

The balance of the equities plainly favor awarding the Workers interest. They prevailed in their claim that Denny's unlawfully paid them subminimum wages of $2.83/hour, retaining for itself more than $3 million that it rightfully should have paid them as wages. Denny's has had free use of that money for more than 6 years. The PMWA generally parallels the FLSA and serves similar legislative aims. "In the absence of effective minimum fair wage rates for employes, the depression of wages by some employers constitutes a serious form of

unfair competition against other employers, reduces the purchasing power of the workers and threatens the stability of the economy." 43 P.S. § 333.101.

Allowing Denny's to retain $3 million in unlawfully withheld wages without paying interest on that amount undermines the PMWA's purposes and incentivizes employers to attempt other wage theft schemes, because even if they are ultimately found liable, they "would in effect enjoy an interest-free loan for as long as they could delay paying out the wages." *Friedrich*, 1995 WL 412385, at *3. Meanwhile, Wintjen and the Workers have been deprived their full earnings for years. They would not in any sense be receiving a "windfall" through prejudgment interest, as their judgment represents only *the bare minimum wages* that Denny's was required to pay them by law, and the interest they sought is only the statutory rate of 6%, accruing as of the *last day* Denny's violated the law, rather than the entire Class Period.

The fairness of awarding interest in this case is even more profound when compared to cases such as *Andrews*, which applied the rule of mandatory interest to a single individual's backpay claim for $742,221, resulting in more than $216,000 in interest, and further held

that the plaintiff was entitled to liquidated damages as well. *Andrews*, 158 A.3d at 127–28 (describing amounts), 136–37 (affirming interest and holding that liquidated damages were also available).

Since interest is available "as of right" for employees who are able to negotiate for compensation packages above the minimum wage (and therefore sue under an employment contract rather than the PMWA), it would make little sense if minimum wage workers dependent on the PMWA's protections were ineligible for the same remedy. Workers earning the minimum wage can generally be expected to suffer the *most* hardship when their wages are withheld, given that they are paid the least amount legally permitted in our society for their labor.

The District Court failed to follow clear Pennsylvania and federal court precedent holding that prejudgment interest is available as of right for backpay awards, or, at a minimum, that it is presumptively appropriate. This Court should reverse and award the interest.

## VIII. The District Court erred in reducing the Workers' counsel's hourly rates when determining whether the Workers' attorneys' fees request was reasonable.

**Standard of Review:** "The question of what standard to apply in calculating attorney's fees and costs is a legal question and is subject to

plenary review." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 533 (3d Cir. 1997). "The determination of the appropriate billing rate is a factual finding which we review for clear error." *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 709 (3d Cir. 2005), *as amended* (Nov. 10, 2005). This Court reviews the overall reasonableness of awards of attorneys' fees for abuse of discretion. *Loughner v. University of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001).

The Workers obtained a judgment in excess of $3 million attributable to their claim under the PMWA, which also provides that a prevailing plaintiff is entitled to recover "costs and such reasonable attorney's fees as may be allowed by the court." 43 Pa. Stat. Ann. § 333.113. Pennsylvania law also provides a list of nonexclusive factors courts should evaluate in "all cases where the court is authorized under applicable law to fix the amount of counsel fees":

> (1) the time and effort reasonably expended by the attorney in the litigation;
> (2) the quality of the services rendered;
> (3) the results achieved and benefits conferred upon the class or upon the public;
> (4) the magnitude, complexity and uniqueness of the litigation; and
> (5) whether the receipt of a fee was contingent on success.

Pa. R. Civ. P. 1717.

In the District Court's order on the Workers' motion for attorneys' fees, it substantively analyzed and decided only two issues: the reasonableness of Lynch Carpenter's requested hourly rates, JA13–24, and whether to exclude certain specific billing entries, JA24–30. As explained below, the District Court abused its discretion by reducing Lynch Carpenter's rates to a Pittsburgh "market" rate, without accounting for the market of high-risk, contingency-only cases in which Lynch Carpenter focuses its practice. The District Court also erred in failing to consider additional factors that indicated the fee request was reasonable.

### C. The District Court negated the contingent risk aspect of Lynch Carpenter's rates, and then failed to consider the contingent nature of the case anywhere else in the fee analysis.

In reviewing, and then reducing, Lynch Carpenter's requested hourly rates, the District Court abused its discretion by failing to consider whether the contingent nature of the case, as well as the fact that Lynch Carpenter's practice is exclusively contingent fee based, justified the reasonableness of the rates. Many courts have observed that attorneys who perform contingent fee work need to utilize a higher hourly rate to earn the equivalent of a non-contingent fee attorney, to

account for nonpayment risk in losing cases. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 737 (1987) ("[T]he market-based fee or hourly rate that is contingent on success is necessarily higher than the hourly rate charged when payment is current and certain.") (Blackmun, J., dissenting); *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 642 (7th Cir. 2011) ("contingent-fee-earning attorneys actually need to recover above their 'market rate' in cases they win to balance out cases where they lose and recover nothing").

Under federal law, contingent fee lawyers who prevail in most statutory fee-shift cases are generally unable to obtain a risk multiplier enhancement on top of their lodestar. This is because the Supreme Court has presumed that the risk associated with contingent representation would be "subsumed" or "reflected" within the lodestar. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992) (explaining that the risk of loss in a particular case is a product of the merits of a claim and the difficulty of establishing the merits, and "ordinarily reflected in the lodestar—either in the higher number of hours expended to

overcome the difficulty, *or in the higher hourly rate of the attorney skilled and experienced enough to do so.*") (emphasis added).

In Pennsylvania, however, a court reviewing a fee request may account for contingent risk in two ways: either accepting a straight lodestar at higher contingency rates, or applying a multiplier enhancement to non-contingent market rates. This is because both this Court and the Pennsylvania Superior Court have predicted that the Pennsylvania Supreme Court would depart from the United States Supreme Court's decision in *Dague* when it comes to fee-shift cases brought under Pennsylvania law, due to Pa. Civ. P. Rule 1717's explicit mention of contingency representation as a factor to be considered when determining a reasonable fee. *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 535 (3d Cir. 1997); *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 977 (Pa. Super. Ct. 2011) ("We predict that the Pennsylvania Supreme Court would permit a trial court to enhance the lodestar amount to account for a particular case's contingent risk *only* to the extent that those factors creating the risk are not already taken into account when calculating the lodestar amount.").

Workers' counsel noted in their fee request brief that their rates needed to be considered in this context—in other words, they ordinarily billed at higher rates than attorneys who bill on a non-contingent hourly basis. Pls.' Mem. in Supp. of Mot. for Fees, Dist. Ct. Dkt. 333 at 13–14; *see also* JA327–28 (explaining that Lynch Carpenter's focus on contingent representation cases meant that its "rate structure must be calibrated to account for the substantial risk of non-recovery we face in most of our cases."). Counsel also wrote that if Denny's objected to Class Counsel's hourly rates, "then Plaintiff respectfully requests an enhancement multiplier of Class Counsel's lodestar to account for the contingency risk removed from their hourly rates," as permitted under Pennsylvania law. *Id.* at 14 n.13 (citing *Braun*, 24 A.3d at 980).

The District Court did not separately analyze the contingency factor under Rule 1717, nor did it discuss whether Lynch Carpenter's rates could be considered reasonable in light of Lynch Carpenter's explanations that they litigated almost exclusively on a contingent basis and had calibrated their rates accordingly. If anything, the District Court weighed these facts *against* the reasonableness of Lynch Carpenter's rates, by opining that Lynch Carpenter's contingency case

focus meant that their rate schedule does not reflect the "market," because Lynch Carpenter's clients do not actually pay on an hourly basis. JA19 & *id.* n.13.

After reducing Lynch Carpenter's attorney rates across the board from between 15–25%, and the non-attorney rates even more, JA23–24, the District Court did not consider whether it should apply a multiplier enhancement on top of the lodestar as permitted under Pennsylvania law, and as Class Counsel requested in the event that Denny's challenged the reasonableness of the rates. It should have conducted the analysis, as Pennsylvania courts have agreed with this Court that "'a counsel fee awarded under a fee-shifting statute cannot be 'reasonable' unless the lodestar, calculated as if the attorney's compensation were guaranteed irrespective of result, is adjusted to reflect the actual risk that the attorney will not receive payment if the suit does not succeed.'" *Polselli.*, 126 F.3d at 536 (quoting *Rendline v. Pantzer*, 661 A.2d 1202, 1228 (N.J. 1995); *Braun*, 24 A.3d at 980 ("A contingency enhancement on top of the lodestar is appropriate … if the lodestar does not reflect counsel's contingent risk."); *Signora*, 886 A.2d

at 293 (affirming trial court's addition of a 1.5 multiplier to a lodestar award in a PMWA case).

The District Court's reduction of Lynch Carpenter's rates without considering whether those rates justifiably accounted for contingency risk, and failure to then consider whether to apply a contingency multiplier to the reduced rates, resulted in an incomplete fee analysis that this Court should vacate.

### D. The District Court failed to give proper weight to numerous other courts' approvals of Lynch Carpenter's rates in complex litigation, which are strong evidence of Lynch Carpenter's fair market rates.

The District Court also erred in giving minimal weight to Lynch Carpenter's evidence that its rates were routinely approved in connection with contemporaneous class action settlements. This is strong evidence that Lynch Carpenter's rates are reasonable in the firm's actual market, but the District Court disregarded this evidence and characterized it as "not highly probative." JA16.

Lynch Carpenter identified seven cases in which its rates had been approved in 2023–2024 in conjunction with fee requests submitted in class or collective action settlements, including three in Pittsburgh

and a fourth in Philadelphia. JA351 ¶ 24. In addition to those cases, Lynch Carpenter performed substantial work in *In re: Philips CPAP, Bi-Level PAP, and Mechanical Ventilator Products Liability Litigation*, 2:21-mc-1230, MDL No. 3014 (W.D. Pa.) ("*In re Philips CPAP*"), a major class action/mass tort action pending contemporaneously with this action. JA330. In that case, Lynch Carpenter's 2023 rates—close to the rates were used in this case—were approved for a fee request in conjunction with a class settlement. JA330–31. Lynch Carpenter partner Kelly Iverson, who was appointed one of the four lead counsel for the case, used a rate of $900, which was $550 less per hour than the highest partner rate submitted by other plaintiffs' counsel. *Id.*

Lynch Carpenter's ability to recover their requested rates in these cases weighs strongly in favor of their reasonableness for two reasons. First, rather than a district court's assessment of a hypothetical "market" rate for all complex litigators in Pittsburgh generally, the contemporaneous fee awards from other district courts show what Lynch Carpenter, in particular, was actually earning in the market at the relevant time. Second, the firm's ability to earn their requested rates in other cases (plus, in many instances, a multiplier on top)

indicates that Lynch Carpenter would suffer a significant court-imposed opportunity cost for working on this matter if the District Court's order is affirmed.

The District Court declined to give these prior fee approvals significant weight because they came in the context of class settlements, and in some cases arose out of different locations, *see* JA16–18, but that does not weigh against their probative value in determining a fair rate for Lynch Carpenter's work. Whether a fee request is made in a post-judgment statutory fee shift context such as this, or in a class settlement where a percentage of the recovery is awarded to class counsel, the court's determination of the reasonableness of the attorney's rates should be evaluated under the same standard. In every class settlement—and *especially* when a defendant does not oppose class counsel's fee request—the district court has a "heightened duty" to scrutinize attorneys' fees, "being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 964–65 (9th Cir. 2003)).

### E. The court failed to consider numerous other indicators that the requested fee was reasonable, regardless of whether the court believed Lynch Carpenter's rates were high.

The District Court's ultimate task was not merely to set hourly rates for Lynch Carpenter attorneys, but to instead determine whether Lynch Carpenter's fee request in this case was reasonable in view of all relevant factors. The lodestar and the requested hourly rates are the *starting* point in the analysis, not the end point.

Even if the District Court believed Lynch Carpenter's rates were "high," there was more work to be done. Beyond the lodestar calculation itself, the District Court should have also considered it in context with other factors, including "the quality of the services rendered," "the results achieved and benefits conferred upon the class," "the magnitude, complexity, and uniqueness of the litigation," and, as previously discussed, "whether the receipt of a fee was contingent on success." Pa. R. Civ. P. 1717(2–5).

The District Court did not discuss any of these factors after adjusting Lynch Carpenter's rates and discarding some billing entries. Here, the total requested fee was more than reasonable when viewed against the amount recovered for the class. If the entire fee request of

$1,075,474.50 had been added together with the judgment of $3,026,747.31 and one of the two partial settlements that resolved the FLSA claims ($437,500), the fee requested would represent only 23.57% of the total constructive class benefit. In other words, the requested fee was below the 25% benchmark that is viewed by many courts as a baseline indicator of reasonableness when percentage-based attorney fees are requested out of a common fund. *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005) (describing studies showing average percentage fee recoveries for class actions of various types ranged from 25–31%, and finding the district court did not abuse its discretion in relying on the studies to make an award of 25% in a 9-figure settlement).

By denying counsel the ability to recover a full fee at their usual rates, the District Court's order risks disincentivizing skilled plaintiffs' counsel from fully litigating wage and hour cases to judgment in Pittsburgh. If fee recoveries are on average higher on per-hour basis when obtained through settlements, class counsel will have a financial motivation to settle cases and seek fees out of common funds (i.e., part of the class's recovery), rather than litigate to judgment and be limited

to a straight lodestar fee, without any credit for contingent risk in either the rate assessment or a multiplier enhancement.

The reductions to Lynch Carpenter's rates, and denial of any multiplier to account for contingent risk, resulted in a fee award substantially below the range that would typically be awarded had the case settled for approximately the same total constructive amount. This should have been an indication to the District Court that the initial fee request was reasonable in its total amount and did not need to be reduced, regardless of whether Lynch Carpenter's rates appeared high to the District Court compared to non-contingent fee lawyers.

For the reasons above, the Court should vacate the fee order and remand with instructions to the District Court to reconsider the fee request in this case.

## CONCLUSION

Wintjen and the Workers respectfully request that this Court affirm the District Court's summary judgment and class certification orders, but reverse the District Court's denial of prejudgment interest, and vacate the District Court's order regarding attorneys' fees.

Dated: November 7, 2025 Respectfully submitted,

By: /s/ *Jamisen A. Etzel*

Jamisen A. Etzel
LYNCH CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
(412) 322-9243
jamisen@lcllp.com

Gerald D. Wells, III
CONNOLLY WELLS
& GRAY, LLP
101 Lindenwood Dr., Ste. 225
Malvern, PA 19355
T: 610-822-3700

*Attorneys for Appellees*

# CERTIFICATIONS

I, Jamisen A. Etzel, hereby certify as follows:

1. Pursuant to Rule 46.1 of the Local Appellate Rules for the United States Court of Appeals for the Third Circuit, I, certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2. Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(c), I certify that this Reply Brief of Appellant complies with the type and volume limitations of Fed. R. App. P. 28.1(e)(2)(B):

   a. According to the word count in the word processing system employed in drafting this brief (Microsoft Word), this Principal and Response Brief of Appellees contains 15,063 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

   b. This Brief has been written in Century Schoolbook, a proportionally-spaced, 14-point serif font.

3. On today's date, November 7, 2025, I filed this brief with the Clerk of the United States Court of Appeals for the Third Circuit via the Court's CM/ECF system, which will cause service on counsel for all

parties of record, who are registered CM/ECF Users. Additionally, all counsel of record were served via email.

4. I further certify that the E-Brief was scanned for computer viruses using the current version of VirusTotal scanning service, and no virus was detected.

5. I certify that the electronically filed version of the brief and the paper copies sent to the Court are identical.

*/s/ Jamisen A. Etzel*
Jamisen A. Etzel
*Counsel for Appellant*